THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD MCGRATH, Appellant.

First Department, May 31, 1977

*Herald Price Fahringer (Barbara J. Davies* with him on the brief), attorney for appellant.

*Edward Agnew McDonald* of counsel *(Peter L. Zimroth* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

LUPIANO, J. On February 20, 1973, defendant appeared as a witness before a Grand Jury and was granted transactional immunity. Defendant inquired if any of the questions to be asked were based on evidence acquired through any form of electronic surveillance, to which the Assistant District Attorney responded: "[I]t is anticipated that some of the questions which will be asked of you * * * may be derived from electronic eavesdropping". Defendant's request to be taken before the court was honored and at such time defendant sought to determine whether the questions to be asked were derived from unlawful electronic surveillance. Defense counsel argued that defendant was entitled to a full suppression hearing. In denying such hearing, the Justice presiding examined the eavesdropping applications and found each on its face to be valid. He directed defendant to return to the Grand Jury and answer "all legal and proper questions." Upon his return, defendant advised that he would answer "under protest." He then proceeded to answer questions propounded in a lengthy interrogation the transcript of which is over 180 pages. On the basis of this testimony, defendant was indicted for two counts of criminal contempt in the first degree, in violation of section 215.51 of the Penal Law in that his answers were so equivocal, evasive and patently false as to amount to no answer at all.

Before trial the second count was dismissed because defendant's answers to the line of inquiry which was the basis of said count were deemed sufficiently unequivocal to preclude a charge of evasive contempt.

Prior to trial on the one remaining count, defendant moved to suppress his Grand Jury testimony. He argued in support thereof that the questions underlying the alleged contempt were based upon unlawful electronic surveillance order. These orders from which the questions propounded to defendant before the Grand Jury were derived, were found to be legally defective by the court. Nevertheless, the court denied defendant's motion, concluding that the evidentiary ban against the fruits of illegal electronic surveillance did not apply to this case. This conclusion was premised on the observation that defendant's false and evasive testimony was the product of his independent decision to improperly obstruct the Grand Jury's investigation and was not the product of evidence derived from illegal electronic surveillance.

At trial defendant was convicted of the one count of evasive contempt. On appeal he argues, *inter alia,* that it was error not to suppress his Grand Jury testimony derived from unlawful electronic surveillance and that reversible error was committed by the trial court in permitting the reading to the petit jury of the *entire* transcript of defendant's Grand Jury testimony, containing "a host of highly prejudicial areas of inquiry, irrelevant to the specific question under indictment."

The critical issue is whether a Grand Jury witness who has been indicted for criminal contempt based upon alleged equivocal, evasive and patently false answers ("evasive" contempt) may have such testimony suppressed and the indictment dismissed on the ground that the questioning was the product of improper electronic surveillance.

"Initially, we note that the New York eavesdropping statutes were intended, when enacted, to harmonize State law on electronic surveillance with Federal law. (See Governor's Memorandum on an approval of L. 1969, ch. 1147, N. Y. Legis. Annual, 1969, p. 586.)" *(People v Mulligan, 40 AD2d 165, 166.)* Examination of Federal cases which have concerned themselves with this topic is illuminating. The Court of Appeals for the Third Circuit, *en banc,* in *Matter of Grand Jury Proceedings, Harrisburg, Pa. (Egan)* (450 F2d 199) concerned itself with the issue of whether a citizen summoned before a Grand Jury may object to questions based on information obtained

through allegedly illegal wiretapping. One Sister Egan, named in an indictment as an alleged coconspirator, but not as a codefendant, was summoned before a Federal Grand Jury investigating an alleged plot to kidnap a high public official. She was granted "transactional" immunity, but refused to testify before the Grand Jury, contending that the information which prompted the questions propounded to her flowed from illegal electronic surveillance. After being instructed by the court to answer the questions and refusing to answer, she was held in contempt. It was noted that the Fourth Amendment's basic purpose is to safeguard the security and privacy of citizens against arbitrary invasions by governmental officials. Section 2515 of title III of the Omnibus Crime Control and Safe Streets Act of 1968 (US Code, tit 18, § 2515) was viewed as "an unequivocal bar to questioning one before a grand jury if the questions are derived from electronic surveillance conducted in the absence of a properly issued warrant and aimed at the witness, if the witness himself objects to the interrogation" (450 F2d, at p 202). Said section provides: "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence drived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, *grand jury,* department, officer, agency, regulatory body, legislative committee, or other authority *of the* United States, a *State, or a political subdivision thereof,* if the disclosure of that information would be in violation of this chapter" (emphasis supplied).

The Third Circuit Court of Appeals further pertinently observed (p 209): "a district court may not compel the violation of an express congressional prohibition. Section 2515 of the Act directly and clearly forbids the presentation to a grand jury of evidence derived from the contents of oral communications improperly obtained. The Government does not except to such position * * * In order to effectuate the legislative purpose, Congress prohibited not only the introduction of the contents of conversations illegally obtained, but also any evidence derived therefrom. Such a rule has a twofold effect—to protect the courts from becoming unwilling participants in illegal governmental activity, and to protect the privacy of citizens. In framing the legislation in question, Congress adopted a traditional judicial approach to Fourth Amendment problems—a prohibition against the use of evi-

dence seized in violation of the Amendment, and also a prohibition against the use of evidence acquired by the Government as a result of the inhibited conduct. In the present case the District Court had a duty to follow the express direction of Congress found in § 2515. *By ordering Sister Egan to testify before the grand jury when Congress has legislated the exclusion of such evidence, the District Court simply acted inconsistently with the legislative mandate"* (emphasis supplied). The conferring of transactional immunity did not deprive Sister Egan of standing to raise the section 2515 defense to a proposed judgment of contempt because she continued "to have a substantial interest in preventing the Government from compounding its original violation of her privacy by forcing her to answer questions that would concededly not be asked absent the information discovered through the use of unwarranted wire-taps" (450 F2d, at p 210). Otherwise, the right of citizens to be free from questions based on illegal electronic surveillance would be placed beyond judicial review by the mere expedient of affording such immunity. The Fourth Amendment cannot be thus circumvented. Accordingly, it was concluded that the District Court's judgment of contempt be vacated and the matter remanded for a hearing to determine whether *the Grand Jury questions* in the case were the fruits of unconstitutional electronic surveillance.

The Circuit Court's determination was approved in *Gelbard v United States* (408 US 41). In *Gelbard,* the question "whether a showing that *interrogation* would be based upon the illegal interception of the witness' communications constitutes a showing of 'just cause' that precludes a finding of contempt" (408 US at p 45; emphasis supplied) was answered in the affirmative. The United States Supreme Court proceeded on the premise that the Government had utilized improper electronic surveillance and the testimony sought from the witnesses was "evidence derived" from the intercepted communications within the meaning of section 2515 and that said section "prohibits the presentation to grand juries of the *compelled* testimony of these witnesses. The narrow question, then, is whether under these circumstances the witnesses may invoke the prohibition of § 2515 as a defense to contempt charges brought on the basis of their refusal to obey court orders to testify. We think they may" (408 US at p 47; emphasis supplied). Mr. Justice BRENNAN in delivering the opinion of the court declared (pp 51-52, 60):

"The purposes of § 2515 and Title III as a whole would be subverted were the plain command of § 2515 ignored when the victim of an illegal interception is called as a witness before a grand jury and asked questions based upon that interception * * * Consequently, to order a grand jury witness, on pain of imprisonment, to disclose evidence that § 2515 bars in unequivocal terms is both to thwart the congressional objective of protecting individual privacy by excluding such evidence and to entangle the courts in the illegal acts of Government agents * * * to compel the testimony of these witnesses compounds the statutorily proscribed invasion of their privacy by adding to the injury of the interception the insult of compelled disclosure * * * Furthermore, grand jury witnesses do not normally discover whether they may refuse to answer questions by filing motions to suppress their potential testimony. The usual procedure is, upon the Government's motion, to have a court order a grand jury witness to testify upon penalty of contempt for noncompliance."

It is well settled that "[a] Grand Jury witness need not answer questions based on information obtained as the result of illegal wire-tapping (U.S. Code, tit. 18, § 2515). Nor may the contempt power be used to compel such testimony or punish the witness for his silence. The claim of illegal wiretapping, if sustained, constitutes a defense" (People v Einhorn, 35 NY2d 948, 949). Parenthetically, it is noted that in contradistinction to Einhorn, the defendant here did seek the advice or instruction of the court upon a concession by the People that electronic surveillance was utilized, which concession was mandated by defendant's initial raising of the issue and at the Grand Jury prior to giving his testimony.*

The analysis set forth above would mandate a reasoned conclusion that the Grand Jury testimony of defendant herein which forms the basis of his contempt conviction must be suppressed as it proceeded from questions arising out of improper electronic surveillance. However, the People claim that once defendant began answering the questions he was

---

* As noted in the footnote to the Court of Appeals' Per Curiam in Einhorn (p 949): "The Federal statute (U.S. Code, tit. 18, § 3504) requiring the prosecutor to affirm or deny in Federal Grand Jury proceedings [where the witness raises a section 2515 claim] does not apply to the States, and the legislative history indicated that the omission was intentional." In New York State Grand Jury proceedings, the witness must request to be brought before the court and this request obligates the prosecutor to affirm or deny the underlying facts. Of course, the prosecutor may at his discretion affirm or deny the underlying facts upon the mere raising of the claim.

obligated to respond forthrightly and truthfully; that his decision to answer the questions was an independent intervening factor sufficient to dissipate the taint arising from the illegal eavesdropping which formed the basis for the questions; and that a witness who answers evasively may not raise the unlawful eavesdropping as a defense to a contempt indictment. These contentions are without merit and to sustain them would result in a perversion of Fourth Amendment rights. The distinction between contempt based on refusal to answer when directed to answer and contempt based on evasive testimony when directed to answer is one without substance under the circumstances herein. Both types of contempt result in noncompliance with the directive to answer. In the first instance, there is no answer because of a refusal to answer. In the second, there is no answer because the answer is "so false and evasive as to be equivalent to no answer at all" *(People ex rel. Valenti v McCloskey,* 6 NY2d 390, 398).

An excellent analysis of contempt is set forth in *People v Ianniello* (36 NY2d 137). In that case, Chief Judge BREITEL observed (pp 142-143): "To be guilty of contempt the witness need not flatly refuse to answer the questions put to him; false and evasive profession of an inability to recall, which amounts to no answer at all, is punishable as criminal contempt [citations] * * * Certain offenses, grouped under the general statutory headings of 'perjury' and 'other offenses relating to judicial and other proceedings', contain an element involving materiality, legality or propriety (Penal Law, §§ 210.10 [perjury in the second degree]; 210.15 [perjury in the first degree]; 210.40 [making an apparently sworn false statement in the first degree]; 215.50 [criminal contempt in the scond degree]; 215.51 [criminal contempt in the first degree]; 215.60 [criminal contempt of the Legislature]; see *People v. Teal,* 196 N. Y. 372, 376; *People ex rel. Hegeman v. Corrigan,* 195 N. Y. 1, 9; *People v. Sharp,* 107 N. Y. 427, 456; *Wood v. People,* 59 N. Y. 117, 121-122; *Tuttle v. People,* 36 N. Y. 431, 435; see, generally, Denzer and McQuillan, Practice Commentary, McKinney's Cons. Laws of N. Y. Book 39, Penal Law, § 210.15, pp. 696-699; 1939 Report of N. Y. Law Rev. Comm., p. 301, N. Y. Legis. Doc., 1939, No. 65[G]; 1935, Report of N. Y. Law Rev. Comm., p. 227, N. Y. Legis. Doc., 1935, No. 60 [F]). In each of these instances, the statute requires either that false statements made by a witness be 'material to the action, proceed-

ing or matter involved', or *that questions put to a witness be 'legal and proper' or 'material and proper'."*

In analyzing the terms used in the contempt statute and concluding that the legality and propriety of questions asked of a witness is a question of law, it was specifically noted that the term " 'Legal' could also refer to questions concededly not based upon tainting illegal sources (see, e.g., U. S. Code, tit. 18, § 2515; *People v. Einhorn,* 35 N Y 2d 948)" *(People v Ianniello, supra,* p 145). Study of *People v Ianniello (supra)* reinforces the conclusion that no vital distinction is served in contrasting contempt accomplished by evasive profession of an inability to recall with that accomplished by a flat refusal to answer where the questions are based upon improper electronic surveillance. Such questions are not "legal and proper." To hold that the witness' decision to respond to the tainted questions not by silence but by evasion is an independent, intervening factor sufficient to dissipate the taint is to overlook the fact that the indictment is based on *both* the questions and answers, and not the answers alone.

Clearly, defendant seasonably raised his Fourth Amendment claim which obligated the People to admit of the use of electronic surveillance and upon such admission, resulted in the *in camera* inspection by the court of the eavesdropping orders. As a consequence the court perceiving the orders as proper on their face directed defendant to answer. To reiterate, Trial Term on defendant's subsequent motion to suppress concluded the electronic surveillance was improper and defendant had standing to attack the eavesdropping, and that if he had refused to answer, he would have preserved the right to suppress his testimony prior to trial. However, because he had testified, albeit evasively, he was held to have waived this right which is founded on the Fourth Amendment. The result is anomalous. In effect, it is suggested that defendant would have been well advised to refuse to answer all questions, even though in direct violation of the court order directing him to answer. Had he done so, defendant would have immediately and automatically subjected himself to a contempt indictment. *People v Einhorn (supra)* does not countenance utilization of the contempt power to compel testimony or punish a witness for not supplying an answer to questions based on information obtained as the consequence of illegal wiretapping. Patently, if defendant had the standing to move to suppress his testimony prior to trial on the basis of unlawful eavesdropping, that

right must include suppression if the eavesdropping is determined to be improper. To hold otherwise, renders the right to a pretrial suppression hearing meaningless in an evasive contempt indictment.

"Few threats to liberty exist which are greater than that posed by the use of eavesdropping devices" *(Berger v New York,* 388 US 41, 63). In *United States v Marion* (535 F2d 697), the United States Court of Appeals for the Second Circuit was concerned with a defendant indicted and convicted for perjury on the basis of inconsistent statements and for obstruction of justice on the basis of false and evasive testimony given before a Federal Grand Jury. Said defendant moved to have the indictment dismissed because the evidence presented to the jury derived from improper electronic surveillance. It was held that where the fruits of the tap were improperly utilized as the basis for questions propounded to defendant before the Grand Jury, the counts of the indictment relating to those questions and answers, to wit, the perjury count and the first count of obstruction of justice must be dismissed and defendant's conviction of those counts reversed. The holding of this case as it relates to perjury—a qualitatively more heinous offense than contempt in that it proceeds from the deliberate giving of false testimony as compared and contrasted with the refusal to give an answer whether by silence or by evasive testimony—lends inferential support to the conclusion that defendant herein was entitled to have his motion to suppress granted.

Two further specific observations are made. First, under traditional notions of attenuation, it cannot be said that the evidence adduced at the trial was not the result of exploitation of the primary illegality (see *Wong Sun v United States,* 371 US 471, 485-488). Further, even apart from the Fourth Amendment consideration delineated above, it was unnecessary and prejudicial to admit defendant's *entire* Grand Jury testimony at trial, for such testimony included irrelevant matters as, for example, defendant's contact with known racketeers. Some effort should have been made at redaction (see *People v Stanard,* 32 NY2d 143). This error of itself would at the very least mandate a new trial.

Parenthetically, we note that upon defendant's raising of his Fourth Amendment right at the Grand Jury proceeding, the *procedure* whereby defendant was taken before the court which then inspected the surveillance orders *in camera* and

directed defendant to answer, was correct. Defendant was not entitled to a full suppression hearing in the course of the Grand Jury inquiry *(Matter of Persico,* 491 F2d 1156). This fact bears upon Trial Term's view that defendant should be deemed to have waived his Fourth Amendment right by not refusing to answer upon court direction to answer. Ignorance or an absence of knowledge is critical where waiver is concerned. The Fourth Amendment may not be crippled by the simple expedient of a claimed waiver under such circumstances.

The extended analysis herein is limned against fundamental political and philosophical concepts underlying our laws and legal system. "[W]e must be ever mindful of the admonition that in a government of laws, the very existence of the Government will be imperiled if it fails to observe the law scrupulously. For the Government teaches the whole people by its example, and if the Government becomes a law breaker, it breeds contempt for law. To declare that the Government may commit crimes in order to secure the conviction of a criminal may well bring unfortunate retribution" *Matter of Grand Jury Proceedings, Harrisburg, Pa. (Egan)* (450 F2d, at p 217). As *Gelbard* warns: "[W]hen a court assists the Government in extracting fruits from the victims of its lawless searches it degrades the integrity of the judicial system. For '[n]othing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence.' *Mapp v. Ohio,* 367 U.S. 643, 659." *(Gelbard v United States,* 408 US, at p 67.)

The judgment of the Supreme Court, New York County (ROTHWAX, J.), rendered September 20, 1976, convicting defendant, after jury trial, of criminal contempt in the first degree (Penal Law, § 215.51), after a hearing denying a motion to suppress defendant's Grand Jury testimony, should be reversed, on the law; the motion to suppress should be granted, and the indictment dismissed.

MURPHY, P. J., EVANS, CAPOZZOLI and MARKEWICH, JJ., concur.

Judgment, Supreme Court, New York County, rendered on September 20, 1976, unanimously reversed, on the law, the motion to suppress granted and the indictment dismissed.