THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MARVIN TEICHER, Appellant.

First Department, February 21, 1980

### APPEARANCES OF COUNSEL

*Jacob W. Heller* of counsel *(Eli Feit* with him on the briefs;
*Heller, Horowitz & Feit,* attorneys), for appellant.

*Robert M. Pitler* of counsel *(David H. Steiner* with him on
the brief; *Robert M. Morgenthau, District Attorney,* attorney),
for respondent.

### OPINION OF THE COURT

KUPFERMAN, J.

The defendant, a practicing dentist, was convicted of two
counts of sexual abuse in the first degree (Penal Law, § 130.65,
subd 2) and sentenced to a term of four months' imprisonment.
He has been at liberty pursuant to a stay of execution of the
judgment and sentence pending this appeal.

The original indictment had four counts of such sexual

abuse, each involving a different complainant. A superseding indictment reduced it to three counts and amended the charge, and after a nonjury trial (CROPPER, J.), defendant was convicted of two of the Counts No. 1—Carson, and No. 3—Beineix.

The basic charge is that defendant subjected each complainant to sexual contact while they were "incapable of consent by reason of being physically helpless". We affirm the convictions. Two of my colleagues, as set forth, would reverse on Count 1 as to "sexual contact", while one of them would reverse as to Count 3 on the search and seizure aspect of using an electronic camera and the making of a videotape.

Initially, we deal with two points on which there is no disagreement. While it was almost two years from the time of the defendant-appellant's arrest until the trial, it cannot be said that there was undue delay or that the defendant was prejudiced thereby. This is so under applicable criteria (*Barker v Wingo,* 407 US 514; *People v Taranovich,* 37 NY2d 442, 445; *People v Prosser,* 309 NY 353, 360). The defendant relies on the specific provisions of CPL 30.30. However, in this well defended case (and this may well also be said with respect to defendant's appeal), the delay was due to the various pretrial proceedings and motions, which cannot be charged to the People alone.

It is not contended that defendant falsely diagnosed the complainants' dental conditions, or that they were persuaded against their will to use a procedure to avoid pain. In both cases, the tooth condition required dental surgery, and the sedation was in conformance with the patients' desire to avoid pain. The condemned activity involved occurred during a resuscitation procedure. The defendant claimed that he was "ventilating" the patients after sedation and that, to the extent they contended sexual abuse, they were hallucinating.

There was sufficient evidence to sustain the determination by the trial court of guilt beyond a reasonable doubt. We therefore address the two remaining questions of importance here.

For Count 1, Carson, was the conduct of the defendant such as to subject the patient to sexual contact within the meaning of section 130.65 of the Penal Law? We are all in agreement that the complainant was in no position to consent, nor does the defendant contend that there was consent. The dissent analyzes the situation well. We incorporate herein by refer-

ence those portions of the analysis in the dissent which sustain the applicability of the statute. Moreover, the thrust of the statute is that the "actor" is the one playing the part. The evidence established that the defendant caused the movements to be made, and the limitation which the dissent seeks to impose on the statute would allow for avoidance of prosecution by careful manipulation. Of course, the *Crandall* case discussed in the dissent is authority in support of the conclusion we reach here.

For Count 3, Beineix, it should be noted that the videotape, which was viewed several times by our court, was inconclusive and showed the defendant, to the extent it showed anything, to be quite circumspect in his conduct. A narrowly drawn court order provided for a camera and a covert entry for installation. There was also a separate sound recording. The camera was focused from a ceiling ventilator on the complainant in the dental chair with the defendant hovering over her engaged in the practice of his profession. It was only during the resuscitation procedure, substantially out of camera view, that the claimed criminal conduct took place. Without the testimony of the police officer, who entered the examination room, and of the complainant, the videotape would be insufficient.

We are mindful of the fact that a State may afford a defendant greater rights than those held to be necessary by the United States Supreme Court under similar Federal constitutional provisions. (See *Oregon v Hass,* 420 US 714, 719.) New York State has, in fact, so ruled. *(Cooper v Morin,* 49 NY2d 69; cf. *Bell v Wolfish,* 441 US 520.) Nonetheless, to do this, there must be "a balancing of the harm to the individual resulting from the condition imposed against the benefit sought by the government through its enforcement." *(Cooper v Morin, supra,* p 79.) Such a balancing here does not justify a New York prohibition on the admissibility of evidence obtained by means that the Federal Constitution would allow.

The use of electronic devices has been sustained by the United States Supreme Court. *(Dalia v United States,* 441 US 238; see, also, *Katz v United States,* 389 US 347.) The use of a pen register has been sustained as a lesser intrusion *(United States v New York Tel. Co.,* 434 US 159, 170). Mr. Justice HAFT has well considered the matter initially in *People v Teicher* (90 Misc 2d 638). Further, there is no problem in other jurisdictions.

"Rule that videotapes are admissible. All the cases so far decided in which this point was raised support the rule, either expressly or by necessary implication, that a videotape film is ordinarily admissible in evidence in a criminal trial." (Admissibility of Videotape Film in Evidence in Criminal Trial, Ann. 60 ALR3d 333, 339, § 3.)

Videotape has already been used to preserve a New York State Court of Appeals session. (Cooke Committee to Draft Rules for Cameras in Courts, NYLJ, Oct. 23, 1979, p 1, col 3; Cameras in the Courtroom, NYLJ, Jan. 25, 1980, p 1, col 2; Cool TV for a Hot Bench, *N. Y. Times* Editorial, Feb. 4, 1980, p A18.)

The New Federal Rules of Evidence were specifically amended to include "video tapes". (Rule 1001, subd [2]; see Am Jur New Topic Serv, § 1001.1.)

Can it be said that with the progress of science and all the useful arts (see *Lithographic Co. v Sarony*, 111 US 53), the more realistic a means of reproduction, the less likely it is to be acceptable as evidence? We conclude that, unless specifically interdicted by the Legislature, it is not to be excluded by the court.

The judgment rendered in the Supreme Court, New York County, on September 21, 1978 should be affirmed.

The case is remitted to the Supreme Court, New York County, for further proceedings to direct defendant to surrender himself pursuant to CPL 460.50 (subd 5).

MURPHY, P. J. (concurring). I would affirm the conviction on the first count under constraint of *People v Crandall* (53 AD2d 956, affd 45 NY2d 851). For the reasons stated below by Justice HAFT (90 Misc 2d 638), I would uphold the legality of the video surveillance. Hence, I would also affirm the conviction upon the third count.

MARKEWICH, J. (concurring in part and dissenting in part). I concur in the dissent of Justice BIRNS except for his expression concerning the use of the automatic camera; thus, I am also to reverse as to the first count and affirm as to the third. As far as applicable, I also concur in the opinion of Justice KUPFERMAN to the extent that he would affirm conviction under the third count, but depart from him as to conviction under the first count, which should be reversed for the reasons stated by Justice BIRNS. My reasons for this departure from my colleague as to use of the camera may be simply stated,

and they are actually based on what is contained in his own writing. Before there had been sufficient technological development in the area of sound recording to permit its almost universal concealed police use, warrants simply based on Fourth Amendment considerations were sufficient to sustain employment of these devices. State and Federal legislative enactments designed to curtail their use by imposed conditions came next, and recordings are used now quite acceptably in police work to a considerable extent. That history of development, taken in its earlier stage, now finds an analogue in camera use. A warrant, conforming to Fourth Amendment requirements—and there is such a warrant here—is sufficient to permit the installation here availed of. What a Legislature may do later restrictively is of no moment at this juncture. By analogy, if the constitutional standards stated in the Fourth Amendment are honored, then, in the absence of restrictive legislation, nothing further than what has been done here should be required for the camera's legal use.

BIRNS, J. (dissenting). It was once said that "[w]henever a court has a case where behavior that obviously is sordid can be proved to be criminal only with great difficulty, the effort to bridge the gap is apt to produce bad law" *(Lutwak v United States,* 344 US 604, 620, Justice JACKSON dissenting). The case before us is an illustration of that thesis.

In affirming the convictions of the defendant, the majority has determined that the actions of the police, under a court-ordered warrant, in installing an electronic camera in the defendant's dental office and utilizing it to obtain incriminating evidence, were legal. I dissent. It is my opinion that the warrant was not authorized by our State Constitution or by statute. The actions of the police were therefore illegal and the evidence obtained under the warrant should have been suppressed.

The reasons for this view can be simply stated.

Our State Constitution permits searches, seizures or interceptions. Section 12 of article I of the Constitution affirms "[t]he right of the people to be secure in their persons, houses, papers or effects, against unreasonable searches and seizures". Warrants may issue, "but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

Continuing, the same section specifically permits telephone

and telegraph communications to be intercepted where certain conditions are met relating to the particular means of communications and particularly describing the person or persons whose communications are to be intercepted and the purpose thereof.

Thus it appears that our Constitution authorizes intrusion into limited areas otherwise considered protected by a right to privacy (Electronic Eavesdropping under the Fourth Amendment, 17 Buffalo L Rev 455). State legislation on eavesdropping is permitted by the interpretation of similar language in the United States Constitution (4th Amdt). (See, e.g., *Katz v United States,* 389 US 347.)

CPL art 700 establishes procedures for obtaining and using eavesdropping warrants. It focuses on the "overhearing of conversations" only. Nowhere in its multiple provisions do we find authorization for the use of an electronic camera.[1]

Eavesdropping is defined in narrow terms:

"§ 700.05 Eavesdropping warrants; definitions of terms.

"As used in this article, the following terms have the following meanings:

"1. 'Evesdropping' means 'wiretapping' or 'mechanical overhearing of conversation,' as those terms are defined in section 250.00 of the penal law.

"2. 'Eavesdropping warrant' means an order of a justice authorizing or approving eavesdropping.

"3. 'Intercepted communication' means (a) a telephonic or telegraphic communication which was intentionally overheard or recorded by a person other than the sender or receiver thereof, without the consent of the sender or receiver, by means of any instrument, device or equipment, or (b) a conversation or discussion which was intentionally overheard or recorded, without the consent of at least one party thereto, by a person not present threat, by means of any instrument, device or equipment. The term 'contents,' when used with respect to a communication, includes any information concerning the identity of the parties to such communications,

---

1. It is to be noted that the electronic camera used in this case had no capability to record sound simultaneously with the videotaping of the defendant. Conversation with the defendant was accomplished through the use of a recording device used by an undercover police officer whom the defendant treated professionally as established under the third count. Hence, there is no basis for the conclusion that the electronic camera, in effect, was a device for overhearing conversations.

and the existence, substance, purport, or meaning of that communication. The term 'communication' includes conversation and discussion."

In section 250.00 of the Penal Law, we again read a definition of eavesdropping:

"§ 250.00 Eavesdropping; definitions of terms.

"The following definitions are applicable to this article:

"1. 'Wiretapping' means the intentional overhearing or recording of a telephonic or telegraphic communication by a person other than a sender or receiver thereof, without the consent of either the sender or receiver, by means of any instrument, device or equipment. The normal operation of a telephone or telegraph corporation and the normal use of the services and facilities furnished by such corporation pursuant to its tariffs shall not be deemed 'wiretapping.'

"2. 'Mechanical overhearing of a conversation' means the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment.

"3. 'Unlawfully' means not specifically authorized pursuant to article seven hundred of the criminal procedure law."

I cannot accept the rationale of my colleagues that because there is nothing in the law to preclude the use of an electronic camera, that the use of such equipment as in this case was lawful as long as there was a warrant issued based on probable cause and otherwise meeting the conditions of our Constitution. This rationale can serve only to diminish the areas wherein a person, any person, may have a reasonable expectation of privacy.

Merely because the professional conduct of this defendant, as disclosed by the evidence before us, is deserving of condemnation, our constitutional safeguards should not be brushed aside in order to sustain a conviction.

We should be mindful of the recent observations of Mr. Justice STEVENS, dissenting in *Dalia v United States* (441 US 238, 262), a case where the police covertly entered private premises, that is, physical entry by an officer into the premises without the owner's permission or knowledge, for the purpose of installing otherwise legal electronic "bugging" equipment. A bare majority of the Supreme Court held that the language, structure and history of title III of the *Omnibus*

Crime Control and Safe Street Act of 1968 (18 US Code Service, §§ 2510-2520), indicated that Congress had conferred on the courts, ancillary to their responsibility for reviewing and approving electronic surveillance applications under that statute, the power to authorize a law enforcement officer covert entry without the owner's permission for the installation of "bugging" equipment in order to carry out the purpose of the warrant.

Justice STEVENS wrote (pp 278-280):

"Because it is not supported by either the text of the statute or the scraps of relevant legislative history, I fear that the Court's holding may reflect an unarticulated presumption that national police officers have the power to carry out a surveillance order by whatever means may be necessary unless explicitly prohibited by the statute or by the Constitution.

"But surely the presumption should run the other way. Congressional silence should not be construed to authorize the Executive to violate state criminal laws or to encroach upon constitutionally protected privacy interests. Before confronting the serious constitutional issues raised by the Court's reading of Title III, we should insist upon an unambiguous statement by Congress that this sort of police conduct may be authorized by a court and that a specific showing of necessity, or at least probable cause, must precede such an authorization. Without a legislative mandate that is both explicit and specific, I would presume that this flagrant invasion of the citizen's privacy is prohibited. Cf., *United States v. New York Telephone Co.,* 434 U. S., at 178-179, (STEVENS, J., dissenting in part); *United States v. Ramsey,* 431 U. S., at 632 (STEVENS, J., dissenting)."

The surreptitious activities of the police in *Dalia* were not so far removed from the purpose and intent of the Omnibus Crime Control Act as were the activities of the police in the case at bar in relation to our State statutes. Although it is not difficult to accept the judicial conclusion in *Dalia* that implicit in a warrant to eavesdrop is permission to install the "bug" (see CPL 700.35). I cannot agree that a statute permitting the installation of a device for mechanical overhearing of a conversation authorizes the issuance of a warrant to secretly install electronic videotape equipment and make a motion picture of the person mentioned in the warrant.

We are confronted here by a desire of the police to justify the use of modern electronic videotape equipment under a statute which is limited to overhearing or recording of conver-

sations. If we approve the police activity, we are indeed amending the statute,[2] a responsibility which devolves upon the Legislature and not the courts.[3] State legislation has failed, perhaps for compelling philosophical reasons, to authorize the gamut of intrusion on privacy made possible by modern electronic equipment. In the absence of specific legislation establishing appropriate standards relating to this particular mode of electronic surveillance, my brethren appear to find no barrier to police intrusion into areas where privacy may be reasonably expected. My concern is that there must be appropriate limits on the police power of the State in matters relating to electronic surveillance and that police conduct must be measured against the requirements of the law. Only in this way can we strike the necessary and desirable balance between privacy and surveillance. Unrestricted surveillance intolerably represses liberty and dilutes privacy (Westin, Science, Privacy and Freedom: Issues and Proposals for the 1970's, 66 Col L Rev 1003). In the absence of enabling legislation, I cannot agree with the majority's finding that the electronic surveillance here was lawful. The videotape should have been suppressed.

I turn now to the counts of the indictment.

The first count charging sexual abuse in the first degree under which the defendant was convicted is not supported by evidence obtained through the use of the electronic camera. The conviction rests upon the testimony of one of the defendant's female patients that she was compelled (while emerging from anesthesia) to touch defendant's trousers over his private parts. The conduct charged to the defendant under this count does not fall within the purview of section 130.65 of the Penal Law, defining the crime of sexual abuse in the first degree.

---

2. See *People v Parker*, 70 AD2d 387 (BIRNS, J., dissenting).

3. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (US Code, tit 18, §§ 2510-2520) recognized the scientific and technological advances of this century (see 1968 US Code, Cong & Admin News, pp 2112, 2154). It was intended that the minimum standards contained in the act be binding on the States. However, the "States would be free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation." (1968 US Code, Cong & Admin News, at p 2187.) CPL art 700 *et seq.* was enacted to conform to this act and its guidelines. (*People v McGrath*, 57 AD2d 405.) (See Governor's Memorandum, NY Legis Ann, 1969, p 586.) In considering the power of the State in the area of electronic surveillance, our Court of Appeals has declared that "the requirements of article 700, which are reflective of controlling Federal law, must be strictly complied with.") (*People v Sher*, 38 NY2d 600, 604.)

See *People v McGee*, 49 NY2d 48, 61 (concurring opn MEYER, J.).

For guilt to be established, it must be proven beyond a reasonable doubt that a defendant subjected another person "to sexual contact * * * 2. [w]hen the other person [was] incapable of consent by reason of being physically helpless".

Sexual contact is defined as "any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party." (Penal Law, § 130.00, subd 3.) There should be no doubt that the word "actor" means the person charged with crime (see Penal Law, § 35.15).

We are instructed that "an inadvertent touching of the intimate parts of another person does not constitute 'sexual contact' as here defined," but that that term is "applicable to such acts as the manipulation of a boy's genitals, digital penetration of a girl's private parts, and the unconsented fondling of a woman's breast." (Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 130.00.) I would agree that a violation of this section is not limited to the examples found in the Commentaries. But the Commentaries do serve as a guide as to the kind of conduct proscribed by the Penal Law.

In seeking to uphold the conviction under the first count, the District Attorney asserts that under the statute contact between the victim and a sexual or other intimate part of the actor may constitute the proscribed sexual contact; that the phrase in the statute "a person not married to the actor" was intended only to make this crime inapplicable to persons married to each other, thus permitting the further argument that touching of the actor's private parts by another person is within the statute's intendment.

This argument finds no support in the history of the statute whose progenitor is the Model Penal Law (see Practice Commentaries, Hechtman, *supra*). Section 213.4 of the Model Penal Law[4] condemns sexual contact between a person and another not his spouse, "or causes another to have sexual contact with him," under circumstances also found in section

---

4. The Model Penal Law, § 213.4, defining sexual assault reads as follows, as far as applicable: "A person who has sexual contact with another not his spouse, or *causes another to have sexual contact with him* is guilty of sexual assault, a misdemeanor if: (1) he knows that the contact is offensive to the other person, or * * * (3) he knows that the other person is unaware that a sexual act is being committed.

"Sexual contact is any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." (Model Penal Code, § 213.5.)

130.65 of our Penal Law. It is of significance that the quoted clause is not found in our statute. It should have been included and not omitted from our Penal Law if the intendment of the statute is that ascribed to it by the District Attorney.

The District Attorney relies on *People v Crandall* (53 AD2d 956, affd 45 NY2d 851) as authority for his reading of the statute. In that case, insofar as a brief memorandum opinion reads, the defendant was convicted of sexual abuse in the first degree (Penal Law, § 130.65). The Appellate Division, noting that the defendant contended that the record fails to establish an act of "sexual contact" as defined in subdivision 3 of section 130.00 of the Penal Law, said, "there was ample evidence for the jury as to the victim having touched his sexual parts with her hands and that alone is sufficient to be 'sexual contact'."[5] I disagree. In *People v Vicaretti* (54 AD2d 236) the Appellate Division, Fourth Department, indorsed the view of sexual contact as expressed in the Practice Commentaries (Hechtman, Practice Commentaries, *supra*).

For these reasons it is my opinion that the evidence elicited under the first count failed to establish as a matter of law and fact that the defendant was guilty of the crime of sexual abuse in the first degree.

The conviction under the third count must also fall, if my conclusion is correct that the evidence obtained through the use of electronic camera was unlawfully obtained and improperly received at trial. Its effect in that event is to taint the testimony of Detective Dadona, whose entry into the defendant's office was prompted by the video transmission.

Were it not for this conclusion, I would find that the defendant's conviction under the third count should be affirmed. The evidence to support the conviction was both circumstantial and direct, and there would be no justification to interfere with the fact finding of the trial court, whose conclusion it was that the guilt of the defendant was established beyond a reasonable doubt (see *People v Joyiens,* 39 NY2d 197, 203).

MURPHY, P. J., concurs in an opinion; FEIN, J., concurs in opinion by MURPHY, P. J., with respect to the first count and in opinions by MURPHY, P. J., and KUPFERMAN, J., with respect to second count; MARKEWICH, J., concurs in part and

---

5. In affirming *Crandall,* the Court of Appeals did not deal with this issue at all but rather with the claim that the trial court coerced the jury's verdict.

dissents in part in an opinion; BIRNS, J., dissents in an opinion.

Judgment, Supreme Court, New York County, rendered on September 21, 1978, affirmed. The case is remitted to the Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (subd 5).