883 P.2d 417

**The STATE of Arizona, Appellee,**

v.

**Teodoro C. VERDUGO, Appellant.**

**No. 2 CA–CR 93–0524.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 30, 1993.

Review Denied Nov. 1, 1994.

Grant Woods, Atty. Gen., by Paul J. McMurdie and Galen H. Wilkes, Phoenix, for appellee.

Ralls, Bruner, Valenzuela & Marshall, P.C. by Sean Bruner, Tucson, for appellant.

## OPINION

LACAGNINA, Judge.

Raising numerous issues, appellant appeals from his convictions for one count of conspiracy; two counts of offer, sale, or transportation of cocaine; and one count of offer, sale, or transportation of heroin, all class two felonies. We find no error and affirm.

Appellant was one of 31 people indicted on 81 drug-related counts. He was named in five counts, one of which was dismissed at trial. Appellant's case was severed, and he was tried with one co-defendant. The state's case arose from the wiretapping of four telephones and its interception of some 500 calls. Although the state's initial discovery included approximately 29 calls involving appellant, its case at trial was based on 17 calls. Nearly all the calls the state intercepted were conducted in Spanish. The conversations contained numerous slang words that a police officer testified constituted codes used by drug dealers. Based on the definitions the officer applied to the code words and the transcripts of the taped conversations, the state produced evidence that appellant, while an inmate at the Department of Corrections, telephoned his brother in Phoenix to arrange for the delivery of drugs to the prison in Douglas.

## ADMISSION OF TAPES

### Constitutionality of Statute

Appellant argues initially that the trial court abused its discretion in admitting into evidence the tapes of the calls, based on several grounds. First, he contends that the trial court erred in denying his motion to suppress, arguing that because the Arizona wiretapping statute is unconstitutionally broader than the federal statute, the application for the wiretap order was improper. The applicable portion of the federal statute provides:

> The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications....

18 U.S.C. § 2516(2). The state statute reads in part as follows:

> An ex parte order for interception of wire, electronic or oral communications

may be issued by any justice of the supreme court, judge of the court of appeals or judge of the superior court upon application of a county attorney or the attorney general or such prosecuting attorneys as they may designate in writing.... A.R.S. § 13–3010(A). Appellant argues that the Arizona statute cannot lawfully permit the principal prosecuting attorneys designated in the federal statute to delegate their authority to others, citing *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). We disagree.

In *Giordano*, the Supreme Court held that the portion of the federal statute applicable to federal wiretap orders did not authorize requests by those not expressly named. That ruling is of no assistance here because it interpreted a different section of the statute. Arizona's statute has been upheld as constitutional, *State v. Gortarez*, 141 Ariz. 254, 686 P.2d 1224 (1984); *State v. Olea*, 139 Ariz. 280, 678 P.2d 465 (App.1983); *State v. Politte*, 136 Ariz. 117, 664 P.2d 661 (App. 1982), but appellant's challenge to it has not previously been addressed. According to the legislative history of the federal statute, states are " 'free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation.' " S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187, *quoted in State v. Farha*, 218 Kan. 394, 400, 544 P.2d 341, 347 (1975), *cert. denied*, 426 U.S. 949, 96 S.Ct. 3170, 49 L.Ed.2d 1186 (1976). In *Farha*, the Kansas Supreme Court ruled that its state statute was unconstitutional, in part because it authorized not only the attorney general and county attorneys to apply for wiretaps but also assistant attorneys general. The court concluded that the authorization of an assistant attorney general created an impermissible conflict with the federal statute.

We find more persuasive, however, the analysis in *Commonwealth v. Vitello*, 367 Mass. 224, 327 N.E.2d 819 (1975), construing a statute similar to Arizona's. Observing that Congress did not intend to completely supersede state law, as evidenced by its provision for concurrent state regulation, the court ruled that the Massachusetts statute would be preempted only if it prevented "the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 250, 327 N.E.2d at 835. Because its statute required the assistant district attorneys to be specially designated and because the federal legislative history reflected a recognition that the determination of delegation of authority was one of state law,[1] the court ruled that its statute did not conflict with the intent of the federal statute both that wire and oral communications be protected and that wiretap orders be issued only according to uniform and consistent standards. Because we agree with that analysis, we conclude that Arizona's statute also substantially complies with the federal statute and, therefore, is constitutional.

*Adequacy of Authorization*

■ Appellant next contends that, even if the statute is constitutional, the affidavits filed in support of the wiretap application were woefully inadequate. In *Vitello*, the court set out guidelines for implementation of its statute. In connection with the authorization of assistant attorneys general, the court required that special designation be on a case-by-case basis only, that the principal prosecuting attorney fully and fairly review the grounds asserted as warranting an order, and that the authority to apply be in writing.

In this case, the application for the wiretap order was signed by a deputy county attorney who is the supervisor of the Organized Crime Bureau. He stated that he had read the affidavits of the police officers, that he believed the information in them showed violations of drug laws, and that wiretapping was required because other investigative techniques had been tried and failed. An affidavit by the Maricopa County Attorney was also filed that authorized the deputy to apply for the wiretap order.

---

1. According to the applicable senate report: " 'Paragraph (2) provides that the principal prosecuting attorney of any State ... may *authorize* an application ... for an order authorizing the interception of wire or oral communications.

*The issue of delegation by that officer would be a question of State law.' "* S.Rep. 1097 at 2187, quoted in *Vitello*, 367 Mass. at 255, 327 N.E.2d at 838 (emphasis supplied in *Vitello* ).

After appellant's motion to suppress was argued, the deputy county attorney filed an affidavit at the request of the trial court. In it, the deputy stated that at the time he applied for the order, he had reviewed the investigative officers' affidavits, determined there was probable cause for a wiretap order, and reviewed the case generally with the county attorney. The county attorney also filed an affidavit in which he stated that he decides the county's policy on wiretap investigations, including when to seek court approval. He noted that before the application in this case was filed, his deputy had informed him of the agency seeking the order, the crimes expected to be uncovered, the general background of the investigation and the reason for a wiretap request, and the resources to be used in the investigation. The deputy had also informed the county attorney that the people to be investigated were an Hispanic family. Finally, the county attorney stated that he had expressly delegated to his deputy the authority to apply for the order, as he does in each case.

We disagree with appellant's contentions that the affidavits were impermissibly vague and that the county attorney lacked sufficient specific information about the case to properly delegate his authority to apply for an order. Considering the evidence presented to the trial court, we conclude that the procedures followed here provided sufficient safeguards of appellant's rights and constituted substantial compliance with both the federal and state statutes. We find no error in the trial court's denial of appellant's motion to suppress.

### Denial of Timely Disclosure

■ Appellant next contends that in admitting the tapes into evidence, the trial court violated his rights to timely disclosure and to confront the witnesses against him. Because appellant made no constitutional argument below, we review that issue only for fundamental error. *State v. Flowers,* 159 Ariz. 469, 768 P.2d 201 (App.1989).

■ In January 1992, the state timely disclosed all the tapes the investigation had produced, together with transcripts of the English translations. Appellant's request that Spanish transcripts be provided as well was apparently denied. The tapes were never transcribed in Spanish, and the jury received only English transcripts. Because no Spanish transcripts were produced or presented in evidence, we find no violation of appellant's confrontation rights, thus, no fundamental error, in the state's failure to disclose Spanish transcripts.

■ We also disagree with appellant's argument that disclosure of the tapes and English transcripts did not qualify as "disclosure" because they were not in a form counsel could use to prepare a defense. As counsel informed the trial court, she did not speak Spanish herself. Therefore, we are unclear how the Spanish translations would have assisted her in preparing the defense. Appellant, on the other hand, speaks no English. Defense counsel was assisted by an employee of the court interpreter's office in comparing the tapes to the English transcripts; in addition, appellant, counsel, and the interpreter spent time listening to the tapes. Although neither the listening conditions nor the tape quality was ideal, we find that the tapes and transcripts were properly disclosed to the defense. We find no violation of Ariz.R.Crim.P. 15.1(a)(7), 17 A.R.S.

### Other Arguments

■ We find no merit to appellant's remaining arguments about the admission of the tapes. His argument that the police officer's preconceived notion that the taped conversations contained references to drug transactions is one that goes to the weight of the evidence, not its admissibility. Appellant questioned the officer about that perception in cross-examination. Although some mention was made of the differences in metering the tapes depending upon the machine used, appellant did not object on that ground, and has shown no prejudice because of it.

### ADMISSION OF ENGLISH TRANSLATIONS

Appellant complains that the trial court abused its discretion in permitting the transcripts of the English translations to go to the jury, arguing that the court should have

followed the procedures used by other courts, the police officers were unqualified to translate the tapes, and the transcripts were first disclosed to the jury before the parties had approved them.

As appellant notes, some federal appellate courts have adopted procedures for the admission into evidence of translations of tapes of conversations conducted in a foreign language.

> Initially, the district court and the parties should make an effort to produce an "official" or "stipulated" transcript, one which satisfies all sides. If such an "official" transcript cannot be produced, then each side should produce its own version of a transcript or its own version of the disputed portions. In addition, each side may put on evidence supporting the accuracy of its own version or challenging the accuracy of the other side's version.

*United States v. Wilson,* 578 F.2d 67, 69–70 (5th Cir.1978). That procedure is followed in the Fifth, Seventh, and Eleventh Circuits. *United States v. Zambrana,* 864 F.2d 494 (7th Cir.1988); *United States v. Cruz,* 765 F.2d 1020 (11th Cir.1985); *United States v. Llinas,* 603 F.2d 506 (5th Cir.1979), *cert. denied,* 444 U.S. 1079, 100 S.Ct. 1030, 62 L.Ed.2d 762 (1980).

■ Although no specific procedure has been adopted in Arizona, the one outlined above is essentially the one the trial court followed. The initial translations were made by several police officers. The state moved to allow the jury to receive transcripts of the conversations, proposing that it submit a list of the applicable telephone calls prior to trial, the defense could review the transcripts and indicate inaccuracies, and the parties could confer to resolve their disagreements. The court ruled that the court interpreter could compare the state's translation to the tapes and appellant could object to any discrepancies at a hearing. At the hearing, the court interpreter testified that she had made significant changes in the state's transcripts. The state stipulated to accept whatever changes the interpreter made, and those transcripts were the ones introduced at trial. Under the circumstances, therefore, we find no error.

We find no merit to appellant's complaint that the translations were inadmissible because the police officers did not meet the criteria of a court interpreter, as required by the court in *Leal v. State,* 782 S.W.2d 844 (Tex.Crim.App.1989). Because that ruling was based on a court rule Arizona does not have, it is inapplicable.

We also disagree with appellant's contention that the jury was given transcripts that were not agreed upon until the final day of trial. The record reflects that only those transcripts that the court interpreter had completed were given to the jury; indeed, the court precluded one transcript because it had not been timely completed by the interpreter. The only event that occurred the last day of trial was the police officer's final verification that the single-conversation tapes that were introduced at trial corresponded exactly to the transcripts that were given to the jury. Because only portions of the conversations were presented to the jury, the court sought to make certain that none of the tapes contained dialogue that did not appear in the transcripts. Both the tapes and the transcripts went to the jury room.

Because the transcripts that were given to the jury were translations corrected by a court interpreter, we need not address appellant's argument that the initial translations were made by unqualified police officers.

## OFFICER AS EXPERT WITNESS ON NARCOTICS CODES

■ Appellant contends that the trial court erroneously permitted a Spanish-speaking police officer to testify as an expert on the narcotics codes used by those whose conversations were intercepted, arguing that he was not qualified and that his expert opinion should have been limited to the street meaning of words and phrases. The state moved in limine to preclude appellant from objecting to the officer's testimony about the codes. The trial court denied the motion, observing that the state could seek to qualify its officer, the defense could object, and the court would rule on the issue at trial. The state then called the officer and questioned him about his qualifications to testify

as an expert on the codes used by narcotics dealers. Appellant did not object that he was unqualified. The issue, therefore, is waived. *State v. Holder,* 155 Ariz. 83, 745 P.2d 141 (1987).

◼ Appellant argues that the officer testified on the ultimate issues of the case, conceding, however, that such testimony is permitted under Ariz.R.Evid. 704, 17A A.R.S. The officer testified to the meaning among drug dealers of various terms that were used in the taped conversations and his interpretation of the conversations in that context, based on his extensive experience and undercover work in the investigation of narcotics transactions. Appellant objected once near the beginning of that testimony on the ground that his testimony invaded the province of the jury. The court overruled the objection "at this point." Appellant did not again object until later, when his specific objection to one question was sustained. Appellant made one additional objection on the ground that the question invaded the province of the jury, an objection that was overruled. The prosecutor asked whether the term "kilo" is code, and the court permitted the officer to define the term for the jury. We find no error. *See State v. Nightwine,* 137 Ariz. 499, 671 P.2d 1289 (App.1983).

## IMPOSITION OF FINE

◼ The sentencing minute entry reflects that the court imposed a fine of $10,000, presumably pursuant to A.R.S. § 13–3408(E). In its oral pronouncement, however, the trial court stated that appellant was required by law to pay a $2,000 fine on each count except the conspiracy count. The court then directed the clerk to delete the reference to a fine on one of the counts for offer to sell cocaine, thereby imposing the fine only on the count for offer to sell heroin and one count of offer to sell cocaine. Appellant requests that we reduce the fine to $4,000 to correspond to the court's oral pronouncement. The state contends that because the fine is mandatory for each violation of the narcotics statute, *State v. Tellez,* 165 Ariz. 381, 799 P.2d 1 (App. 1990), the appropriate fine would be $6,000. Because the state seeks, in essence, to increase appellant's sentence on appeal and

because it did not cross-appeal on that issue, we do not address it. *See State v. Anderson,* 171 Ariz. 34, 827 P.2d 1129 (1992).

◼ The state also recommends, however, that we remand for resentencing as to the fine only, arguing that the trial court's intention is unclear from the oral pronouncement. Because we conclude that the intention is clear, *State v. Bowles,* 173 Ariz. 214, 841 P.2d 209 (App.1992), we decline to do so. Pursuant to appellant's request, therefore, we correct the sentencing minute entry to reflect the imposition of a fine of $4,000.

## PRESENTENCE INCARCERATION CREDIT

◼ Appellant's final complaint is that the trial court only gave him credit for 129 days of presentence incarceration. Because he was incarcerated on another conviction at the time he was arrested on these offenses, he contends that the credit should date from the day of his arrest. A person serving a sentence for a prior conviction, however, is entitled to credit only from the earliest release date for the previous offense. *State v. Bridgeforth,* 156 Ariz. 58, 750 P.2d 1 (App. 1986), *approved in pertinent part,* 156 Ariz. 60, 750 P.2d 3 (1988). Because appellant did not object at the time of sentencing and because he has pointed to nothing in the record that would entitle him to additional presentence credit, *see State v. Bojorquez,* 111 Ariz. 549, 535 P.2d 6 (1975), we affirm the credit awarded by the trial court.

We have searched the record for fundamental error and have found none. Therefore, we affirm appellant's convictions and the sentences imposed but modify the imposition of the mandatory fine.

LIVERMORE, P.J., and FERNANDEZ, J., concur.