298 P.3d 224

STATE of Arizona, Appellant,

v.

Steven SALAZAR, Sergio Zuno Trejo,
Oswaldo Ramirez, and Miguel
Solorzano, Appellees.

Nos. 1 CA–CR 12–0167, 1 CA–CR 12–0170,
1 CA–CR 12–0171, 1 CA–CR 12–0184.

Court of Appeals of Arizona,
Division 1, Department C.

March 28, 2013.

* A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed August 15, 2012.

Jon R. Smith, Yuma County Attorney by Roger Nelson, Chief Criminal Deputy, and Deann L. Sandry, Deputy County Attorney, Yuma, Attorneys for Appellant.

Cameron A. Morgan, Scottsdale, Attorney for Appellees.

## OPINION

SWANN, Judge.

¶ 1 The State of Arizona appeals the trial court's suppression of evidence obtained through a wiretap. We hold that an application for wiretap must satisfy the literal requirements of A.R.S. § 13–3010. Because the application in this case did not contain the applicant's sworn statement of supporting facts as required by that statute, we affirm the trial court's suppression order.

### FACTS AND PROCEDURAL HISTORY

¶ 2 The state indicted Appellees Salazar, Trejo, Ramirez and Solorzano for felony offenses related to drug possession, sale or trafficking, and gang activity. Appellees filed motions to suppress evidence obtained through a wiretap.[1] Appellees argued that the application for the wiretap failed to comply with state and federal law because the applicant did not submit it under oath, the application contained none of the information required by statute, and the applicant was not a proper designee of the county attorney. The state countered that the application substantially complied with applicable law because "the Deputy County Attorney reviewed the [deputy sheriff's] Affidavit more than once, obtained the authorization from the Yuma County Attorney as required, completed the Application which incorporated the information contained in the Affidavit and presented it to the judge for his review." The state further argued that the court that authorized the wiretap could have placed the deputy county attorney under oath at the

time she sought the wiretap if it had concerns.

¶ 3 The trial court granted the motions to suppress, finding that the state's application was deficient on its face because it did not comply with state or federal law, and that those deficiencies went "beyond form over substance."[2] Rather than proceed without the wiretap evidence, the state chose to dismiss the cases without prejudice.

¶ 4 The state timely appeals the orders granting the motions to suppress. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A), 13–4031, and 13–4032. Our review is for abuse of discretion. State v. Spears, 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996). We review questions of statutory interpretation de novo. State v. Mangum, 214 Ariz. 165, 167, ¶ 6, 150 P.3d 252, 254 (App.2007).

### DISCUSSION

¶ 5 A wiretap is an "extraordinary investigative device." United States v. Giordano, 416 U.S. 505, 527, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). Recognizing "the grave threat to privacy that wiretaps pose," the United States Congress "spelled out 'in elaborate and generally restrictive detail' the process by which wiretaps may be applied for and authorized." United States v. Staffeldt, 451 F.3d 578, 580 (9th Cir.2006) (citation omitted). As part of this statutory scheme, Congress further provided that any state law regarding the application for and authorization of wiretaps must also comply with federal law. 18 U.S.C. § 2516(2). The states, therefore, were "free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation." State v. Verdugo, 180 Ariz. 180, 183, 883 P.2d 417, 420 (App.1993) (citation omitted).

¶ 6 Arizona's wiretap statute substantially complies with federal law, and imposes even more restrictive requirements.[3]

1. The record on appeal does not contain the information obtained through the wiretap.

2. The trial court did not address whether the county attorney properly designated the deputy county attorney as an applicant. That issue is

not essential to our decision, and we likewise decline to address it.

3. Because the wiretap was invalid under Arizona law, we need not separately address the federal wiretap statute.

*Verdugo,* 180 Ariz. at 183, 883 P.2d at 420. Unlike federal law, the Arizona statute requires two levels of verification. A.R.S. § 13–3010(A). Under Arizona law, only the attorney general, a county attorney, or a prosecuting attorney designated by a county attorney or the attorney general may apply for a wiretap. *Id.* The applicant must submit the application in writing, upon the applicant's oath or affirmation. A.R.S. § 13–3010(B). We agree with the view expressed in *State v. Grant,* 176 Conn. 17, 404 A.2d 873, 878 (1978), that "[t]he requirement that the application be submitted under the oath of the applicant places upon the state's attorney a stringent burden fully to review and vouch for the evidence set forth in the application."

¶ 7 Under A.R.S. § 13–3010(B)(2), the applicant must provide a "full and complete statement of the facts and circumstances relied upon *by the applicant,* including the supporting oath or affirmation of the investigating peace officer of this state or any political subdivision of this state to justify the officer's belief that an order should be issued." (emphasis added). The applicant's statement must include details of the offense(s) at issue; the identity of the person(s) who allegedly committed the offense(s) and whose communications will be intercepted; a description of the types of communications to be intercepted; and a description of the nature, identification and location of the place where the communication will be intercepted. A.R.S. § 13–3010(B)(2)(a)–(d). The applicant must also provide a "full and complete statement as to whether other investigative procedures have been tried and failed" or why other procedures are unlikely to succeed or are too dangerous to undertake. A.R.S. § 13–3010(B)(3). Further, the applicant must identify the period of time the interception will take place. A.R.S. § 13–3010(B)(4). Finally, the applicant must provide "a full and complete statement" of the facts regarding all previous applications involving the same persons, facilities or places. A.R.S. § 13–3010(B)(5).

¶ 8 In this case, the application consisted simply of a one-paragraph summary request for wiretap signed by the deputy county attorney. The application attached the affidavit of a deputy sheriff. In her application, the deputy county attorney did nothing more than provide her name, identify her authority to make the application, and ask that the court authorize a wiretap for the reasons stated in the affidavit of the deputy sheriff. But the application contained none of the information required by A.R.S. § 13–3010(B).

¶ 9 The language of A.R.S. § 13–3010(B)(2) is clear. It requires a recitation of the facts relied upon by the applicant, "including" the oath of the investigating officer. The use of the term "including" indicates that the sworn facts supplied by the investigating officer, while necessary, are not sufficient to support an application. Under our statute, it is also necessary for the applicant, under oath, to vouch for the complete set of facts upon which he or she relied in determining whether to seek a wiretap. *See Grant,* 404 A.2d at 878.

¶ 10 The state nonetheless contends that it substantially complied with A.R.S. § 13–3010(B). While the state concedes that the application was submitted without a written oath, it argues that the ethical obligations of a prosecutor imply that the mere signature of a prosecutor is the functional equivalent of an oath. We disagree. It is an axiom of our legal system that an oath or affirmation is not a mere formality. The oath serves a unique and critical purpose in assuring the reliability of evidence presented to the court. And while an attorney's submission of a signed document surely carries ethical weight, mere signing of a document does not ordinarily subject the signer to the penalty of perjury.

¶ 11 The deputy sheriff's affidavit may well have provided much of the same information that a compliant application would have contained. But the Arizona legislature has specifically required that a properly designated prosecutor vouch for *all* the information upon which the state relies. Were we to collapse the requirement for a prosecutor's sworn application into the requirement for a sworn statement by the investigating officer, we would do violence to the plain language of A.R.S. § 13–3010. We cannot find substan-

tial compliance when there has been a complete failure to comply with a provision of a statute whose purpose is to protect liberty and privacy.

■ ¶ 12 We recognize that "when the facial insufficiency is so 'minor ... that it does not substantially impair the accomplishment of Congress's [or the legislature's] purpose,'" suppression is not required. *Staffeldt,* 451 F.3d at 584. Here, however, the facial insufficiency did substantially impair the purpose of A.R.S. § 13–3010(B). Arizona law requires that the applicant serve a more substantial role than that of a mere courier for law enforcement investigators. We conclude that the trial court did not abuse its discretion when it granted the motion to suppress.

## CONCLUSION

¶ 13 Because we find no error, we affirm the order suppressing the wiretap evidence.

CONCURRING: PHILIP HALL, Presiding Judge and SAMUEL A. THUMMA, Judge.