NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

NICOLA PARISE, IV., *Appellant.*

No. 1 CA-CR 21-0333
FILED 8-18-2022

Appeal from the Superior Court in Maricopa County
No.  CR 2017-001905-001
The Honorable Katherine Cooper, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Law Office of Daniel Hutto, PLLC, Phoenix
By Daniel Hutto
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

_____

**C A M P B E L L**, Judge:

¶1             Nicola Parise, IV appeals his convictions and sentences. He challenges the superior court's denial of his motion to suppress evidence and its preclusion of two defense witnesses. For the following reasons, we affirm.

## BACKGROUND

¶2             The facts relevant to the issues raised on appeal are not disputed. Based on evidence gathered by law enforcement during a lengthy drug-trafficking investigation (the Investigation), the State charged Parise with numerous offenses. The State also alleged aggravating circumstances and that Parise had historical prior felonies.

¶3             A jury convicted Parise of one count of conspiracy to commit sale or transportation of marijuana, one count of illegally conducting an enterprise, one count of possession of marijuana for sale, five counts of sale or transportation of marijuana, and two counts of money laundering in the second degree. The jury also found one or more aggravating circumstances for each count.

¶4             Upon finding Parise had two historical prior felony convictions, the superior court sentenced him as a Category 3 offender to concurrent terms totaling 11 years' imprisonment. Parise timely appealed.

## DISCUSSION

### I.      Denial of Motion to Suppress Wiretap Evidence

¶5             Parise challenges the superior court's denial of his motion to suppress evidence obtained through electronic wire surveillance. We review the denial of a motion to suppress for an abuse of discretion. *State v. Mendoza-Ruiz*, 225 Ariz. 473, 475, ¶ 6 (App. 2010).

**¶6**            In November 2016, the Maricopa County Attorney signed a notarized authorization (the Authorization) permitting four deputy county attorneys to apply for a wiretap order for three named Investigation targets, including Parise. The Authorization also allowed the designated deputy county attorneys to apply for modifications, amendments, and extensions to an initial wiretap order.

**¶7**            Shortly after the County Attorney issued the Authorization, one of the designated deputy county attorneys submitted a wiretap application (the Application) to the superior court, attaching a law enforcement affidavit supporting the request. The superior court approved the Application (Wiretap 492) and two subsequent amended applications (as relevant to Parise, the amended applications added only one additional phone line for surveillance).

**¶8**            In August 2017, the County Attorney signed a notarized affidavit (the Affidavit) avowing that he "*always* personally review[s] the facts and circumstances" of each case before authorizing any wiretap applications. He also attested that he authorizes a wiretap application only when probable cause supports the request and other investigative procedures have failed.

**¶9**            Before trial, Parise moved to suppress the evidence obtained through the wiretap. Relying primarily on *Villa v. Maricopa County*, 865 F.3d 1224 (9th Cir. 2017), he argued the Application violated federal law because the County Attorney delegated his authority to apply for a wiretap to deputy county attorneys without submitting an affidavit concurrently with the Application indicating that he had personally reviewed the evidence supporting the requested wiretap order. Parise further asserted that the Affidavit—signed and submitted after the fact and on the heels of the Ninth Circuit's decision in *Villa*—did not cure the defect in the Application.

**¶10**            The superior court denied Parise's motion to suppress. While agreeing that the Application was facially defective when submitted, the court reasoned that the Affidavit provided the requisite avowals and cured the deficiency, rendering the Application substantially compliant with federal law. The court also found that the evidence obtained via the wiretap was admissible because the law enforcement officers conducting the Investigation had acted in good faith.

**¶11**            "A wiretap is an 'extraordinary investigative device'" that poses a significant threat to privacy. *State v. Salazar*, 231 Ariz. 535, 536, ¶ 5 (App. 2013) (quoting *United States v. Giordano*, 416 U.S. 505, 527 (1974)). For

this reason, "the United States Congress spelled out in elaborate and generally restrictive detail the process by which wiretaps may be applied for and authorized." *Id.* (internal quotations and citations omitted). "As part of this statutory scheme, Congress further provided that any state law regarding the application for and authorization of wiretaps must also comply with federal law." *Id.* (citation omitted). Accordingly, states may "adopt more restrictive [wiretap] legislation, or no legislation at all, but not less restrictive legislation." *Id.* (quoting *State v. Verdugo*, 180 Ariz. 180, 183 (App. 1993)).

¶12        Under federal law, only the "principal prosecuting attorney" of a state, or "a political subdivision thereof," may apply for a wiretap. 18 U.S.C. § 2516(2). And, in support of a wiretap application, the principal prosecuting attorney must make certain declarations, as delineated by federal statute. 18 U.S.C. § 2518(1) (requiring, among other things, a "statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued"). The corresponding Arizona law, in contrast, permits a principal prosecuting attorney—an attorney general or a county attorney—to delegate the authority to apply for a wiretap to a subordinate prosecuting attorney and allows the subordinate prosecuting attorney to make the requisite avowals. A.R.S. § 13-3010(A), (B).

¶13        When confronted with the incongruity between the federal and Arizona laws governing wiretap applications, this court reconciled the respective statutes by applying the general principle that substantial rather than literal compliance with federal law is required. *Salazar*, 231 Ariz. at 536–37, ¶ 6; *Verdugo*, 180 Ariz. at 183–84. Under this framework, we repeatedly upheld A.R.S. § 13-3010(A) as compliant with federal law. *Salazar*, 231 Ariz. at 536–37, ¶ 6 (concluding Arizona's wiretap statute "imposes even more restrictive requirements" than federal law); *Verdugo*, 180 Ariz. at 183 (reasoning A.R.S. § 13-3010(A)'s requirement that a subordinate prosecuting attorney "be specially designated" by a principal prosecuting attorney upholds the intent of the federal statute "that wire and oral communications be protected and that wiretap orders be issued only according to uniform and consistent standards").

¶14        The Ninth Circuit has since concluded, however, that A.R.S. § 13-3010(A)'s delegation provision—authorizing a designated subordinate prosecuting attorney to make the requisite declarations in support of a wiretap application—impermissibly conflicts with federal law. *Villa*, 865 F.3d at 1227, 1232. In reaching this conclusion, the Ninth Circuit explained that the purpose of the federal law "is to ensure that a publicly responsible

official subject to the political process personally approves a wiretap application." *Id.* at 1232 (internal quotation and citation omitted). While recognizing that state law governs "the designation of the principal prosecuting attorney . . . who is empowered to authorize interceptions," the Ninth Circuit reaffirmed that "any state statute authorizing wiretapping must meet the minimum" federal standards. *Id.* (internal quotations and citation omitted). Therefore, to substantially comply with federal law, a principal prosecuting attorney must indicate, "as part of the application process," a *personal familiarity* with the facts and circumstances justifying a "belief that [a wiretap] order should be issued." *Id.* at 1234 (internal quotation and citation omitted).

¶15        In a recent memorandum decision, this court addressed a wiretap application's compliance with federal law under substantially similar factual and procedural circumstances and concluded that "*Villa* d[id] not compel suppression." *State v. Ferguson*, 1 CA-CR 20-0117, 2021 WL 2556571, at *5, ¶ 24 (Ariz. App. June 22, 2021) (mem. decision). Unlike the deficient application at issue in *Villa*, "in which the principal prosecuting attorney only affirmed general background knowledge about the criminal investigation at issue," in *Ferguson*, the County Attorney avowed in a post hoc affidavit that he had personally reviewed and authorized the wiretap application after determining that it satisfied the statutory requirements. *Id.* (citing *Villa*, 865 F.3d at 1233–34).

¶16        Parise correctly notes that unlike the circumstances in *Ferguson*, the Affidavit presented to cure the Application's deficiency was "generic" rather than responsive to this specific case. *Id.* at 1 CA-CR 20-0117, at *4, ¶ 22. But this distinction does not negate *Ferguson's* reasoning. Like his declarations in the post hoc affidavit at issue in *Ferguson*, here, the County Attorney avowed in the Affidavit that he reviews the facts and circumstances of *each* case and determines that a wiretap is justified under the relevant statutory considerations *before* delegating authority to seek a wiretap to a designated deputy county attorney.

¶17        While the *Villa* court rejected the post hoc affidavit submitted by the principal prosecuting attorney, in that case, it did so on the basis that the affidavit, itself, was substantially deficient, not because the principal prosecuting attorney's avowals were made after rather than contemporaneous with the submission of the application for a wiretap order. *Villa*, 865 F.3d at 1234. As noted in *Ferguson*, the *Villa* court's explicit consideration of a post hoc affidavit implicitly suggests that "the affidavit would have sufficed had it contained the required averments." 1 CA-CR 20-0117, at *5, ¶ 25. In analogous circumstances, the use of a post hoc

affidavit "to establish that the principal prosecuting attorney had personally reviewed and authorized a wiretap application at the time it was made" has been approved, "even when such avowals were absent from the wiretap application itself." *Id*. at ¶ 26 (citing *United States v. Lyons*, 740 F.3d 702, 721–22 (1st Cir. 2014) (noting that "[n]othing in [the federal statute] requires that a wiretap application itself contain proof that it has been reviewed by the principal prosecuting attorney")); *see also Verdugo*, 180 Ariz. at 184 (affirming the denial of a motion to suppress wiretap evidence based on post-hoc affidavits).

¶18 Because the County Attorney's "after-the-fact affidavit confirming that he personally reviewed and approved the wiretap application before submission meets the substantive [federal] requirement even though the certification did not appear on the face of the application," *Ferguson*, 1 CA-CR 20-0117, at * 5, ¶ 26, the superior court properly found the Affidavit cured the Application's facial defect. In other words, the record reflects that the wiretap application procedures followed in this case substantially complied with federal and state law.[1]

## II. Preclusion of Defense Witness's Testimony

¶19 Challenging the superior court's finding that he failed to comply with mandatory disclosure requirements, Parise argues the court improperly precluded the testimony of two of his witnesses. We review a superior court's "assessment of the adequacy of disclosure for an abuse of discretion." *State v. Roque*, 213 Ariz. 193, 205, ¶ 21 (2006), *abrogated on other grounds by State v. Escalante-Orozco*, 241 Ariz. 254, 267, ¶¶ 13–15 (2017). We likewise review a superior court's ruling on sanctions for an untimely disclosure for an abuse of discretion and "will find an abuse of discretion only when no reasonable judge would have reached the same result under the circumstances." *State v. Naranjo*, 234 Ariz. 233, 242, ¶ 29 (2014) (internal quotation and citation omitted).

¶20 In its initial disclosure, the State identified the names and addresses of numerous prospective witnesses. The State also stated that it may call as a witness "[a]ny individual named or referred to in the preliminary hearing transcript, grand jury transcript, police report, or other [] disclosure." In his notice of defenses, Parise failed to identify any prospective witness by name but stated he might call any individual

---

[1] Because the Affidavit cured the Application's facial defect, we need not address whether the evidence seized via the wiretap was otherwise admissible under the good faith exception.

"named or referred to in the State's Disclosure" to testify. In his subsequent disclosure, Parise again failed to name any potential witness but stated he might call "[a]ny and all of the State's witness[es] even if later withdrawn."

¶21        Early in voir dire on the first day of trial, the superior court read the prospective jurors a list of possible "witnesses" that included Amber Tranel and Kendall Riddell.[2] Three trial days later, during opening statements, defense counsel told the impaneled jurors that the defense would produce two witnesses—Tranel and Riddell—whom the State, allegedly, refused to call to testify. According to defense counsel, the witnesses would deny conspiring with Parise to traffic drugs and launder money.

¶22        At the next break, the prosecutor objected to defense counsel calling "two co[-]conspirators" to testify, arguing Parise had failed to disclose Tranel and Riddell as potential witnesses under the procedural rules. Defense counsel responded that the State had noticed Tranel and Riddell as potential witnesses in *its* disclosure, and Parise had reserved the right to call all *potential* State witnesses in his notice of defenses. When the superior court asked whether defense counsel had subpoenaed Tranel and Riddell, defense counsel implicitly acknowledged he had not, stating, "they're willing to come in and testify." The court instructed the parties to "check on [the] notice issue."

¶23        On the next day of trial, the prosecutor moved, in writing, to preclude defense counsel from calling Tranel and Riddell to testify, asserting a "lack of notice and disclosure." Attaching her initial and supplemental disclosure notices, the prosecutor noted that she had never named Tranel or Riddell as potential witnesses, though she acknowledged that her pretrial disclosure had included boilerplate language stating she might call "[a]ny individual named or referred to in the preliminary hearing transcript, grand jury transcript, police report, or other State's disclosure."

¶24        The following day, the superior court held a hearing on the motion to preclude. The prosecutor argued that the procedural rules

---

[2]        Although the superior court identified the people named on the list as persons who "may be witnesses in this case," the uncontroverted record reflects that the prosecutor submitted Tranel and Riddell's names—*not as potential witnesses but as alleged co-conspirators*—to ensure that none of the jurors had any personal knowledge or relationship with them that may influence the verdicts.

require the named disclosure of witnesses "to prevent trial by ambush" and asserted that allowing Tranel and Riddell to testify would necessarily cause substantial delay because the court would need to appoint counsel for both witnesses and the State would need to conduct additional interviews and investigate possible impeachment evidence. In response, defense counsel contested the prosecutor's claim of prejudice and lack of notice, suggesting that the prosecutor had already interviewed Tranel and Riddell. When asked to provide an offer of proof for the witnesses' prospective testimony, defense counsel initially stated that "the one witness is just simply going to testify" that certain seized drugs did not belong to Parise, but he then acknowledged that he could not "speak for [Tranel and Riddell]," had not interviewed them, and did not know whether they may invoke their constitutional right against self-incrimination—"odds are they don't testify." Defense counsel agreed that the court would need to appoint counsel for both prospective witnesses. When permitted to respond, the prosecutor denied that she or anyone from her office had "interviewed these individuals" and reasserted that defense counsel failed to provide the requisite "notice that they could be potential witnesses."

¶25        After hearing from the parties, the superior court granted the State's motion to preclude Tranel and Riddell from testifying. The court explained that the mere inclusion of "boilerplate language" referring to "all witness[es] listed in a police report," without any other supplemental communication, fails to provide sufficient notice. The court also found the prosecutor's surprise "genuine." Given that both parties agreed that Tranel and Riddell would require appointed counsel to advise them before testifying, the court further reasoned that the associated delay would require a continuance, at a minimum, or possibly the declaration of a mistrial.

¶26        Under the procedural rules governing disclosure, a "defendant must provide . . . the name and address of each person, other than the defendant, the defendant intends to call as a witness at trial, and any written or recorded statement of the witness," within "40 days after arraignment, or 10 days after the State's initial disclosure . . . whichever occurs first." Ariz. R. Crim. P. 15.2(c)(1), (d)(1). Applying this rule to the challenged disclosures, Parise failed to identify Tranel and Riddell by name as potential witnesses timely.

¶27        When confronted with an untimely disclosure, the opposing party may move for sanctions. Ariz. R. Crim. P. 15.7(a); *see also State v. Ramos*, 239 Ariz. 501, 504, ¶ 9 (App. 2016). Upon "determin[ing] the significance of the information not timely disclosed, the violation's impact

on the overall administration of the case, the sanction's impact on the party and the victim, and the stage of the proceedings when the party ultimately made the disclosure," the superior court may order any appropriate sanction, including "precluding or limiting a witness." Ariz. R. Crim. P. 15.7(c)(1).

¶28        While "[t]he right to offer the testimony of witnesses, compel their attendance, and present a defense is guaranteed" by the constitution, the imposition of a preclusion sanction for a disclosure violation "does not necessarily violate the Sixth Amendment." *State v. Delgado*, 174 Ariz. 252, 257 (App. 1993). Before precluding a witness under Rule 15.7, the court should consider: "(1) the importance of the evidence; (2) the surprise or prejudice to the opposing party; (3) whether the violation was motivated by bad faith; and (4) any other relevant factors." *Jimenez v. Chavez*, 234 Ariz. 448, 452, ¶ 17 (App. 2014).

¶29        First, we note that nothing in the record reflects that the witnesses' testimony was vital to the defense. On the contrary, defense counsel acknowledged in his offer of proof that he could not clearly articulate the substance of the witnesses' expected testimony or even confirm that they would testify rather than invoke their constitutional right against self-incrimination. *See State v. Hernandez*, 232 Ariz. 313, 322, ¶ 42 (2013) (explaining that "[a]n offer of proof is critical because it permits the trial judge to reevaluate his decision in light of the actual evidence to be offered, . . . and to permit the reviewing court to determine if the exclusion affected the substantial rights of the party offering it") (internal quotation and citation omitted); *see also State v. Towery*, 186 Ariz. 168, 179 (1996) (explaining a party claiming prejudice from the exclusion of evidence must, "[a]t a minimum, [provide] an offer of proof stating with reasonable specificity what the evidence would have shown"). Because the absence of proof renders us unable to evaluate the importance of the precluded evidence, we cannot discern whether Parise sustained *any* prejudice from the sanction the court imposed.

¶30        Second, although Parise ardently denies that his late disclosure surprised the State, the record supports the superior court's express finding that the prosecutor's professed surprise was "genuine." Had defense counsel given the State timely notice that he intended to call two of Parise's alleged co-conspirators to testify, the record reflects that the prosecutor would have requested the appointment of counsel on their behalf *before* trial rather than *after* the parties' opening statements. Given the absence of any affirmative disclosure from defense counsel and the prosecutor's avowal that neither she nor anyone in her office had spoken

with either witness at any time, the record supports the superior court's finding regarding a lack of notice. *See State v. Gay*, 214 Ariz. 214, 220, ¶ 17 (App. 2007) (explaining appellate courts defer to a superior's court's assessment of a prosecutor's credibility).

**¶31** Third, turning to the nature of defense counsel's conduct, his complete failure to disclose any potential witnesses or seek the appointment of counsel on Tranel and Riddell's behalf demonstrates, at best, a lack of due diligence. *See Naranjo*, 234 Ariz. at 243, ¶ 35 (concluding the defendant's "failure to exercise due diligence could reasonably be construed as 'willful misconduct,'" and therefore the superior court "did not err in precluding [a defense witness's] testimony on that basis"); *State v. Killean*, 185 Ariz. 270, 271 (1996) (concluding that "an unexplained failure to do what the rules require" may amount to "willful misconduct"). Because defense counsel never provided an adequate explanation for his failure to comply with Rule 15.2's express requirements, the superior court "could draw a justifiable inference of lack of good faith on [his] part." *State v. Scott*, 24 Ariz. App. 203, 205 (1975).

**¶32** Finally, considering the availability of a less severe sanction, the record supports the superior court's finding that accommodating Parise's untimely disclosure would have required the appointment of counsel and additional interviews midtrial. Because the late disclosure "caused a significant disadvantage to the [S]tate" and substantial time had already been devoted to impaneling the jury, "preclusion was an appropriate remedy within the court's discretion." *Ramos*, 239 Ariz. at, 505, ¶ 13; *see also Naranjo*, 234 Ariz. at 244, ¶ 47 (holding appellate court will not "disturb" a superior court's decision to preclude evidence "as long as the record demonstrates [the court] *could have found* lesser sanctions insufficient") (emphasis in original); *Killean*, 185 Ariz. at 271 (upholding a preclusion ruling, though the superior court did not explicitly consider other sanctions, because "[o]ther remedies could legitimately be found inadequate" and declaring a mistrial or continuing the trial "would defeat the important interest in efficient judicial administration").

**¶33** Analogizing the circumstances of this case to those in *State v. Recchia*, 1 CA-CR 13-0475, 2015 WL 673782, at *5, ¶ 24 (Ariz. App. Feb. 17, 2015) (mem. decision), Parise nonetheless argues that the superior court improperly precluded Tranel and Riddell from testifying. But Parise's reliance on *Recchia* is misplaced. In that case, defense counsel did not object when the prosecutor announced on the second day of trial that he might call a rebuttal witness—who was not identified by name in the State's pretrial disclosures—to counter the defendant's claim that he had not

willingly participated in the alleged crime. *Id.* at *3, ¶¶ 15–16. *See* Ariz. R. Crim. P. 15.1(h) (requiring the State to "disclose the name and address of each person" it intends to call as a rebuttal witness *upon receiving* the defendant's notice of defenses). Despite the lack of objection, the superior court granted defense counsel additional time to interview the rebuttal witness and review his plea agreement. *Id.* at *3, ¶ 17. After the jury returned guilty verdicts, defense counsel objected, for the first time, to the State calling the previously unnamed witness to testify in rebuttal and moved for a mistrial and new trial. *Id.* at *4, ¶ 19. The superior court denied defense counsel's motions, observing that a "more specific disclosure would have been preferable," but concluding that "the disclosure was adequate under the circumstances because the State *had disclosed* [the rebuttal witness's] statements." *Id.* (emphasis added). On appeal, this court likewise determined that the State's disclosure was "sufficient" and further concluded that even if "the State's failure to specify [the rebuttal witness] by name amounted to a disclosure violation, the superior court appropriately addressed the alleged violation by granting defense counsel an opportunity to review the police reports and plea agreement and to interview [the rebuttal witness]." *Id.* at *4–5, ¶¶ 21, 22. In fact, this court specifically noted that nothing in the record suggested "the alleged nondisclosure caused surprise" or otherwise prejudiced the defendant. *Id.* at *5, ¶ 23.

¶34 Unlike the circumstances in *Recchia*, in this case, the prosecutor promptly objected to defense counsel's assertion that he would call undisclosed witnesses to testify. And, unlike the State's disclosures in *Recchia*, here, defense counsel provided no statements for Tranel and Riddell in his pretrial disclosures, supporting the superior court's finding that the late disclosure "genuine[ly]" surprised the prosecutor. As stated, when asked to provide an offer of proof, defense counsel acknowledged that he had not interviewed the witnesses and could not provide any specificity regarding their prospective testimony. Accordingly, *Recchia* is readily distinguishable.

¶35 In sum, considering the relevant factors—Parise's failure to establish the importance of the excluded evidence to his defense, the surprise to the State, defense counsel's failure to provide any justification for his noncompliance with the disclosure requirements, and the significant delay accommodation of the late disclosure would likely cause—the superior court did not abuse its discretion by precluding Tranel and Riddell from testifying under Rule 15.7. *See State v. Gutierrez*, 121 Ariz. 176, 181 (App. 1978) (upholding the preclusion of a defense witness's testimony as a discovery sanction, despite noting that less stringent sanctions may have

been warranted, given the defendant's failure to demonstrate resulting prejudice).

## CONCLUSION

¶36   For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA